**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC CITIZEN, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:17-cv-00253  RDM |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.* | |
| Defendants. | |

# EXHIBIT A

to Defendants' Memorandum of Points and Authorities
in Support of Motion to Dismiss



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

April 5, 2017

M-17-21

MEMORANDUM FOR: REGULATORY POLICY OFFICERS AT EXECUTIVE
DEPARTMENTS AND AGENCIES AND MANAGING
AND EXECUTIVE DIRECTORS OF CERTAIN AGENCIES
AND COMMISSIONS

FROM:           Dominic J. Mancini, Acting Administrator
                Office of Information and Regulatory Affairs

SUBJECT:        Guidance Implementing Executive Order 13771, Titled "Reducing
                Regulation and Controlling Regulatory Costs"

## I.    Introduction

This guidance, in the form of Questions and Answers (Q&As), addresses the requirements of
Executive Order (EO) 13771, titled "Reducing Regulation and Controlling Regulatory Costs." It
applies to Fiscal Years (FY) 2017 and beyond. This guidance supplements the Office of
Management and Budget (OMB) interim guidance issued on February 2, 2017, titled "Interim
Guidance Implementing Section 2 of the EO of January 30, 2017, Titled 'Reducing Regulation
and Controlling Regulatory Costs.'" While OMB's Office of Information and Regulatory Affairs
(OIRA) believes this guidance largely treats the subjects covered in the February 2, 2017 interim
guidance in a consistent manner, where these two memoranda are in conflict, this guidance
supersedes the previous guidance. It reflects OIRA's consideration of the comments received in
response to the February 2, 2017, interim guidance. Comments sent by members of the public are
available on Regulations.gov in docket ID OMB-2017-0002.

## II.    General Requirements

The guidance explains, for purposes of implementing Section 2, the following requirements:

- "Unless prohibited by law, whenever an executive department or agency . . . publicly
  proposes for notice and comment or otherwise promulgates a new regulation, it shall
  identify at least two existing regulations to be repealed." Sec. 2(a).
- "For fiscal year 2017 . . . the heads of all agencies are directed that the total incremental
  cost of all new regulations, including repealed regulations, to be finalized this year shall be
  no greater than zero, unless otherwise required by law or consistent with advice provided in
  writing by the Director of the Office of Management and Budget . . . ." Sec. 2(b).
- "In furtherance of the requirement of subsection (a) of this section, any new incremental
  costs associated with new regulations shall, to the extent permitted by law, be offset by the
  elimination of existing costs associated with at least two prior regulations." Sec. 2(c).

In general, executive departments or agencies ("agencies") may comply with those requirements by issuing two EO 13771 deregulatory actions (described below) for each EO 13771 regulatory action (described below). The incremental costs associated with EO 13771 regulatory actions must be fully offset by the savings of EO 13771 deregulatory actions.

In addition, agencies planning to issue one or more EO 13771 regulatory actions on or before September 30, 2017, should for each such EO 13771 regulatory action:

- Identify two existing regulatory actions the agency plans to eliminate or propose for elimination on or before September 30, 2017 in a reasonable period of time before the agency issues the EO 13771 regulatory action; and
- Fully offset the total incremental cost of such EO 13771 regulatory action as of September 30, 2017.

Guidance on the requirements of Section 3(a) is forthcoming.

Beginning with FY 2018, Section 3(d) requires the Director of OMB to identify to agencies a total amount of incremental costs (or "regulatory cap" as stated in Section 2) for all EO 13771 deregulatory and EO 13771 regulatory actions finalized during the fiscal year. The total incremental cost imposed by each agency should not exceed the agency's allowance for that fiscal year, unless required by law or approved by the Director. The total incremental cost allowance may be an increase or reduction in total regulatory cost, and will be informed by agencies' draft submissions for the *Regulatory Plan*.

Please consult with OIRA if you have any particular questions regarding the applicability or interpretation of EO 13771 not addressed in these Q&As.

Agencies should continue to comply with all applicable laws and requirements. In addition, EO 12866 remains the primary governing EO regarding regulatory planning and review. Accordingly, among other requirements, except where prohibited by law, agencies must continue to assess and consider both the benefits and costs of regulatory actions, including deregulatory actions, when making regulatory decisions, and issue regulations only upon a reasoned determination that benefits justify costs.

## III.    Definitions

This section provides definitions for terms used in this guidance. The definitions should not necessarily be applied to other sections of EO 13771 that this guidance does not cover, and do not replace definitions used in other EOs or statutes.

***Q1.   What is an "agency"?***

A: An "agency," unless otherwise indicated, means any authority of the United States that is an "agency" under 44 U.S.C. 3502(1), other than those considered to be independent regulatory agencies, as defined in 44 U.S.C. 3502(5). A cabinet department is considered a single agency for purposes of EO 13771 compliance.

***Q2.   What is an "EO 13771 regulatory action"?***

A: An "EO 13771 regulatory action" is:

   (i) A significant regulatory action as defined in Section 3(f) of EO 12866 that has been finalized and that imposes total costs greater than zero; or

   (ii) A significant guidance document (*e.g.,* significant interpretive guidance) reviewed by OIRA under the procedures of EO 12866 that has been finalized and that imposes total costs greater than zero.

For example, EO 13771 regulatory actions include negotiated rulemakings that are significant as defined in Section 3(f) of EO 12866, that have been finalized, and that impose total costs greater than zero.

***Q3.   What is a "significant guidance document"?***

A: As defined in OMB's *Final Bulletin for Agency Good Guidance Practices*, a "significant guidance document" is a guidance document disseminated to regulated entities or the general public that may reasonably be anticipated to:

   (i) Lead to an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities;
   (ii) Create a serious inconsistency or otherwise interfere with an action taken or planned by another agency;
   (iii)Materially alter the budgetary impact of entitlements, grants, user fees, or loan programs or the rights and obligations of recipients thereof; or
   (iv)Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in EO 12866, as further amended.

A significant guidance document does not include legal advisory opinions for internal Executive Branch use and not for release (such as Department of Justice Office of Legal Counsel opinions); briefs and other positions taken by agencies in investigations, pre-litigation, litigation, or other enforcement proceedings; speeches; editorials; media interviews; press materials; Congressional correspondence; guidance documents that pertain to a military or foreign affairs function of the United States (other than guidance on procurement or the import or export of non-defense articles and services); grant solicitations;

warning letters; case or investigatory letters responding to complaints involving fact-specific determinations; purely internal agency policies guidance documents that pertain to the use, operation or control of a government facility; internal guidance documents directed solely to other Federal agencies; and any other category of significant guidance documents exempted by an agency in consultation and concurrence with the OIRA Administrator. In the list above, "internal" policies and guidance documents do not include those that materially affect an agency's interactions with non-Federal entities, even if nominally directed only to agency personnel. For example, an internal directive to field staff on how to implement a regulatory requirement could be a significant guidance document if it satisfied any of (i) through (iv) above.

If they satisfy the definition above, modifications to existing guidance and interpretative documents would be considered significant guidance documents.

### *Q4.   What is an "EO 13771 deregulatory action"?*

A: An "EO 13771 deregulatory action" is an action that has been finalized and has total costs less than zero. An EO 13771 deregulatory action qualifies as both: (1) one of the actions used to satisfy the provision to repeal or revise at least two existing regulations for each regulation issued, and (2) a cost savings for purposes of the total incremental cost allowance. EO 13771 deregulatory actions are not limited to those defined as significant under EO 12866 or OMB's *Final Bulletin on Good Guidance Practices.*

An EO 13771 deregulatory action may be issued in the form of an action in a wide range of categories of actions, including, but not limited to:

- Informal, formal, and negotiated rulemaking;
- Guidance and interpretative documents;
- Some actions related to international regulatory cooperation; and
- Information collection requests that repeal or streamline recordkeeping, reporting, or disclosure requirements.

Significant proposed rules issued before noon on January 20, 2017, that are formally withdrawn by notice in the *Federal Register* and removed from the *Unified Agenda of Regulatory and Deregulatory Actions* may qualify as repeal actions, but do not qualify for cost savings.

Please consult with OIRA regarding other actions your agency believes should qualify as an EO 13771 deregulatory action.

### *Q5.   What does "offset" mean?*

A: The term "offset" means at least two EO 13771 deregulatory actions have been taken per EO 13771 regulatory action and that the incremental cost of the EO 13771 regulatory action has been appropriately counterbalanced by incremental cost savings from EO 13771 deregulatory actions, consistent with the agency's total incremental cost allowance.

*Q6.    What is a "statutorily or judicially required" rulemaking?*

A: A statutorily required rulemaking is one for which Congress has provided by statute an explicit requirement and explicit timeframe for rulemaking. For example, a statute that states, an agency "shall issue nutrition labeling requirements within 10 years" of the statute's enactment date would be considered a statutorily required rule.

A judicially required rulemaking is one for which there is a judicially established binding deadline for rulemaking, including deadlines established by settlement agreement or consent decree.

Agencies should consult with OIRA to determine whether a rule falls within the definition of a statutorily or judicially required rulemaking.

*Q7.    What is a rule issued with respect to a "national security function" of the United States?*

A: For the purposes of EO 13771, a regulation issued with respect to a national security function is a regulation that satisfies the two following requirements:

   (1) The benefit-cost analysis demonstrates that the regulation is anticipated to improve national security as its primary direct benefit; and
   (2) (A) For regulations the agency considers legislative rules: OIRA and the agency agree the regulation qualifies for a "good cause" exception under 5 U.S.C. 553(b)(3)(B); or (B) For other regulations (including significant guidance) the agency and OIRA agree that applying the requirements of EO 13771 to the regulation would be impracticable or contrary to public interest.

*Q8.    What is "total incremental cost"?*

A: The term "total incremental cost" means the sum of all costs from EO 13771 regulatory actions minus the cost savings from EO 13771 deregulatory actions.

**IV.    Scope Questions**

*Q9.    Which new regulations as defined in EO 13771 must be offset?*

A: Agencies are required to offset EO 13771 regulatory actions issued after noon on January 20, 2017. This includes those EO 13771 regulatory actions that are rules finalizing a Notice of Proposed Rulemaking (or in certain instances an interim final rule; see Question 11 for a further discussion) issued before noon on January 20, 2017.

Agencies should use the existing significance determination process outlined in EO 12866 for determining whether an action is an EO 13771 regulatory action. Agencies should not assume that actions that appear, or have appeared, in the *Unified Agenda of Regulatory and*

*Deregulatory Actions* as nonsignificant have been determined by OIRA to be nonsignificant. Agencies should obtain an affirmative significance determination from OIRA before publishing regulatory actions.

### *Q10.   How are interim and direct final rules treated?*

A: In general, significant interim and direct final rules must be offset. However, a significant interim final rule or direct final rule may qualify for an exemption with respect to the timing for identifying and issuing the EO 13771 deregulatory actions.

### *Q11.   How are significant rules that finalize interim final rules (IFR) treated?*

A: If the final rule neither increases nor decreases the cost of the IFR, then the action does not need to be offset nor does it qualify as an EO 13771 deregulatory action. If the final rule includes changes that increase the cost of the IFR, then the final rule must be offset (however, if the final rule imposes only *de minimis* costs relative to the IFR, the final rule may qualify for an exemption). If the final rule reduces the cost of the IFR, then the rule and the cost savings relative to the IFR may qualify as an EO 13771 deregulatory action.

### *Q12.   Must agencies identify EO 13771 deregulatory actions for significant advance notices of proposed rulemaking (ANPRM)?*

A: No. With respect to rulemaking, the requirements of EO 13771 do not apply to pre-notice of proposed rulemaking activities such as ANPRMs.

### *Q13.   How are regulatory actions that implement Federal spending programs or establish fees and penalties treated?*

A: In general, Federal spending regulatory actions that cause only income transfers between taxpayers and program beneficiaries (*e.g.*, regulations associated with Pell grants and Medicare spending) are considered "transfer rules" and are not covered by EO 13771. Additionally, an action that establishes a new fee or changes the existing fee for a service, without imposing any new costs, does not need to be offset; nor does an action that establishes new penalties or fines or changes those already in existence.

However, in some cases, such regulatory actions may impose requirements apart from transfers, or transfers may distort markets causing inefficiencies. In those cases, the actions would need to be offset to the extent they impose more than *de minimis* costs. Examples of ancillary requirements that may require offsets include new reporting or recordkeeping requirements or new conditions, other than user fees, for receiving a grant, a loan, or a permit. Analogously, if an action reduces the stringency of requirements or conditions for transfer recipients or permit holders, the action may qualify as an EO 13771 deregulatory action. Also, an action that causes transfers that, for example, induce moral hazard or other inefficient behavior may need to be offset and an action that reduces such transfers may qualify as an EO 13771 deregulatory action.

6

Please consult with OIRA on these actions, especially with regards to potential distortionary costs due to transfers. See OMB Circular A-4 for a discussion of the distinction between transfers and costs generally.

***Q14.   How are activities treated that are associated with regulatory cooperation or international standards?***

A: Regulatory activities associated with regulatory cooperation with foreign governments that reduce costs to entities or individuals within the United States, including at the border, or otherwise lower the cost of regulations on the United States economy, may qualify as EO 13771 deregulatory actions. Activities associated with standard-setting that reduce costs to entities or individuals within the United States may also qualify as EO 13771 deregulatory actions. However, agency actions to harmonize with the standards of an international body or foreign government that increase costs on United States entities or individuals may need to be offset. OIRA recognizes such harmonization could also lead to operating efficiencies for businesses that agencies may be able to capture in their analysis of the benefits and costs of EO 13771 actions.

Agencies should consult OIRA on how to treat specific regulatory activities related to regulatory cooperation or international standard-setting.

***Q15.   Do regulatory actions overturned by subsequently enacted laws qualify for savings?***

A: Generally, yes. OIRA considers Acts of Congress that overturn final regulatory actions, such as disapprovals of rules under the Congressional Review Act, to operate in a similar manner as agency EO 13771 deregulatory actions.

***Q16.   Do regulatory actions that are vacated or remanded by a court qualify as EO 13771 deregulatory actions?***

A: If a regulatory action issued before noon on January 20, 2017, is vacated by a judicial order for which all appeals have been resolved, OIRA will consider on a case-by-case basis whether the regulatory action being vacated qualifies as an EO 13771 deregulatory action.

If an EO 13771 regulatory action was issued on or after noon on January 20, 2017, any judicial order for which all appeals have been resolved vacating the regulatory action, and any related subsequent agency action (such as a withdrawal of a vacated regulation from the Code of Federal Regulations in order to comply with the order), will not qualify as an EO 13771 deregulatory action. Any EO 13771 deregulatory actions used to offset a vacated EO 13771 regulatory action, however, would be available to offset other EO 13771 regulatory actions (after accounting for any sunk costs incurred in complying with the vacated action).

If a court permits a regulatory action to remain in effect after a judicial remand for further agency proceedings, such as through remand without vacatur, the remanded action remains in effect. Therefore, there is no action at the time of remand that could qualify as an EO 13771

deregulatory action. In the same way that an agency complies with EO 12866 when issuing a subsequent agency action to revise a remanded regulatory action, an agency will similarly need to comply with EO 13771. A subsequent agency action may qualify as an EO 13771 deregulatory action if the subsequent agency action is deregulatory in nature, or may need to be offset if the action is a significant regulatory action that is final and that imposes costs (*i.e.*, an EO 13771 regulatory action).

Agencies should notify OIRA of any judicial decisions that affect regulatory actions subject to EO 13771.

### *Q17.* *What happens if an EO 13771 deregulatory action is remanded or vacated by a court?*

A: As in the answer to the previous question, OIRA recognizes the inherent case-by-case nature of the issues raised by the potential remand or vacatur of an EO 13771 deregulatory action. For example, such decisions may happen years after a rule is finalized, and may affect compliance with both the cost allowances and the repeal provisions established pursuant to EO 13771. The agency should contact OIRA to determine how a remand or vacatur of an EO 13771 deregulatory action affects the agency's obligations under EO 13771.

### *Q18.* *Does EO 13771 apply to significant regulatory actions in which the law prohibits the consideration of costs in determining a statutorily required standard?*

A: Because EO 13771 applies only to the extent permitted by law, agencies are still required to comply with their statutory obligations. Accordingly, if a statute prohibits consideration of cost in taking a particular regulatory action, EO 13771 does not change the agency's obligations under that statute. However, agencies will generally be required to offset the costs of such regulatory actions through other deregulatory actions taken pursuant to statutes that do not prohibit consideration of costs. Because each agency's obligations will differ depending on the particular statutory language at issue, these issues must be addressed on a case-by-case basis.

Please consult with OIRA regarding questions about particular statutory language and its relationship to EO 13771.

### *Q19.* *How do the requirements of EO 13771 apply to significant regulatory actions issued by one agency that do not have the force and effect of law until adopted, with or without change, by another agency?*

A: Because the agency authorities that establish such sequential or otherwise overlapping regulatory responsibilities differ by program, these actions will need to be handled on a case-by-case basis. However, agencies in these circumstances should always work together to avoid double-counting costs and cost savings; they should also work together as closely as possible when developing regulatory approaches for such programs. In cases where one agency's action does not qualify as an EO 13771 regulatory action because it is not a significant regulatory action under EO 12866, associated actions by other agencies may still be covered by EO 13771.

#### *Q20.   Does EO 13771 apply to regulatory actions of independent regulatory agencies?*

A: No. EO 13771 applies only to those agencies that meet the definition of "agency" in this guidance. Nevertheless, independent regulatory agencies are encouraged to identify existing regulations that, if repealed or revised, would achieve cost savings that would fully offset the costs of significant regulatory actions while continuing to meet the agency's statutory obligations.

## V.     Accounting Questions

#### *Q21.   How should costs and cost savings be measured?*

A: Except where noted in other portions of this guidance, costs should be estimated using the methods and concepts appearing in OMB Circular A-4. There are several types of impacts that, under OMB Circular A-4, could be reasonably categorized as either benefits or costs, with the only difference being the sign (positive or negative) on the estimates. In most cases where there is ambiguity in the categorization of impacts, agencies should conform to the accounting conventions they have followed in past analyses. For example, if medical cost savings due to safety regulations have historically been categorized as benefits rather than reduced costs, they should continue to be categorized as benefits for EO 13771 regulatory actions. Identifying cost savings, such as fuel savings associated with energy efficiency investments, as benefits is a common accounting convention followed in OIRA's reports to Congress on the benefits and costs of Federal regulations.

Cost savings estimates for EO 13771 deregulatory actions should follow the same conventions, but in reverse. Only those impacts that have been traditionally estimated as costs when taking a regulatory action should be counted as cost savings when taking an EO 13771 deregulatory action. For example, the medical cost savings described above as historically being counted as benefits when regulating should not then be counted as "negative cost savings" when deregulating.

An agency that has used different accounting conventions across different past analyses should consult with OIRA regarding the categorization of ambiguous impacts. In general, when faced with ambiguity, OIRA will attempt to achieve greater consistency in the categorization of similar types of costs and benefits across different agencies.

OIRA notes that rules that cause an increase in the resources used by Federal agencies to accomplish their programmatic goals may need to be offset, and rules that reduce the real resources used by Federal agencies to accomplish their goals may qualify as EO 13771 deregulatory actions. These types of impacts have long been considered regulatory costs under OMB Circular A-4, and are a component of the costs OIRA includes in its reports to Congress on the benefits and costs of Federal regulations.

For EO 13771 deregulatory actions that revise or repeal recently issued rules, agencies generally should not estimate cost savings that exceed the costs previously projected for the

9

relevant requirements, unless credible new evidence show that costs were previously underestimated. On the other hand, a less recent regulatory impact analysis (RIA) may need revision to reflect, among other things, the fact that only costs occurring after the effective date of the regulatory repeal should be the basis for the cost savings estimate (*i.e.*, agencies should not count sunk costs). Where an agency believes it can significantly improve upon a prior cost estimate, especially a recent one, through methodological enhancements, the agency should first discuss those methodologies with OIRA.

### Q22. How should cost savings be determined for regulatory actions that expand consumption and/or production options?

A: For regulatory actions that expand consumption and/or production options—sometimes referred to as "enabling" regulatory actions or regulations—cost savings should include the full opportunity costs of the previously forgone activities. Opportunity cost in this context would equal the sum of consumer and producer surplus, minus any fixed costs. See OMB Circular A-4 for a more detailed discussion of these concepts.

Generally, "one-time" regulatory actions (*i.e.*, those actions that are not periodic in nature) that expand consumption and/or production options would qualify as EO 13771 deregulatory actions.

There may be situations where this approach for determining the cost offsets generated by an enabling regulatory action is inappropriate. For instance, this approach may not be appropriate in certain circumstances where, if an agency were to fail to issue a regulatory action, a significant existing and ongoing economic activity would be prohibited. See Question 26. Cost offsets for such regulatory actions will be determined on a case-by-case basis.

Please consult with OIRA on all such non-routine regulations.

### Q23. How does Executive Order 13771 apply to routine hunting and fishing regulatory actions?

A. Routine hunting and fishing regulatory actions that establish annual harvest limits are not required to be offset, and are not eligible to be used as cost savings. This includes migratory bird hunting frameworks under the Migratory Bird Treaty Act and fishery management plans and amendments under the Magnuson-Stevens Fishery Conservation and Management Act. This exemption does not apply to regulatory actions that affect hunting and fishing activity that are not routine regulatory actions.

### Q24. What base year should agencies use?

A: Agencies should adjust all estimates to 2016 dollars using the GDP deflator, as released on March 30, 2017, until further guidance is provided by OIRA.

**Q25.  How should agencies calculate cost and cost savings for the purpose of EO 13771 accounting?**

A: Agencies should calculate the present value (as of 2016) of costs for EO 13771 regulatory actions and cost savings for EO 13771 deregulatory actions over the full duration of the expected effects of the actions using both 7 percent and 3 percent end-of-period discount rates.

**Q26.  In determining costs and cost savings under EO 13771, how should regulatory baselines be determined?**

A: For the most part, agencies should follow the guidance about regulatory baselines provided in OMB Circular A-4. However, there can be uncertainty, which is recognized in OMB Circular A-4, regarding how best to capture the directive to assess impacts against the state of the world in the absence of the regulation. Provided below are two cases in which this uncertainty, or other challenges arising in the context of OMB Circular A-4, have often been addressed by performing analyses with multiple baselines. In each of these cases, OIRA has also provided guidance about how to determine costs or cost savings for the purposes of EO 13771:

  (1) When a regulatory action finalizes an interim final rule (IFR), agencies are typically encouraged to present two sets of estimates: the overall regulatory impacts and the incremental impacts relative to the IFR. For purposes of determining costs or available cost savings under EO 13771, agencies finalizing an IFR should include only the incremental impacts of the final rule, relative to the IFR.

  (2) There are multiple Federal programs and policies—such as discharge general permitting under the Clean Water Act or Medicare quality performance tracking— that are updated or renewed at regular intervals via rulemaking. Because these updates reliably occur, an assessment of the incremental changes between the previous and updated programs is often much more informative than a comparison of the updated programs against hypothetical discontinuance. Although multiple-baseline analysis is likely to continue to be encouraged in such cases for analysis conducted under EO 12866, for purposes of EO 13771, costs or cost savings should be determined by the incremental changes between previous and updated programs. For example, if an agency is statutorily or judicially required to issue a regulation every five years to permit or prohibit an activity, and the agency previously issued a regulation to address the requirement, the appropriate baseline to use for estimating the costs or cost savings of the new regulation under EO 13771 is likely the existing regulation (or interim operating conditions if there is temporarily no regulation in effect).

Please consult with OIRA if you have questions regarding the appropriate baseline upon which to calculate costs or cost savings.

### *Q27.  How should agencies treat unquantified costs and cost savings?*

A: As stated in OMB Circular A-4, agencies should use their best efforts to monetize the effects of both regulatory actions and deregulatory actions and, in some cases, significant guidance documents. Depending on the likely magnitude of the effects, such efforts may include conducting or sponsoring studies to develop monetized estimates. In proposed/draft regulatory actions expected to lead to EO 13771 regulatory actions or EO 13771 deregulatory actions agencies should, at a minimum, clearly identify any non-monetized costs or cost savings, explain the key reason(s) why monetization is not possible, discuss any information the agency has that is relevant to estimating such costs, and request information from the public to monetize such costs at the final stage.

The weight assigned to unquantified effects will depend on their significance and degree of certainty, and will be handled on a case-by-case basis. See OMB Circular A-4 for more information on unquantified costs.

### *Q28.  How should agencies treat EO 13771 regulatory actions and EO 13771 deregulatory actions published by multiple agencies?*

A: These will be handled on a case-by-case basis. Agencies should consult OIRA as early as possible to determine the appropriate treatment of the action.

### *Q29.  Can agencies "bank" cost savings and deregulatory actions?*

A: Yes. Agencies may bank both EO 13771 deregulatory actions and the associated cost savings for use in the same or a subsequent fiscal year towards EO 13771's requirement to identify at least two existing regulations to be repealed (unless prohibited by law) and, separately, to comply with the total incremental cost allowance. Surplus EO 13771 deregulatory actions and cost savings do not expire at the end of a fiscal year and can be used in subsequent fiscal years.

For example, if an agency issues four EO 13771 deregulatory actions, the agency may apply them to up to two subsequent EO 13771 regulatory actions, including those occurring in a future fiscal year. Regardless, at the end of each fiscal year, an agency must be able to identify, and should have finalized, twice as many EO 13771 deregulatory actions as EO 13771 regulatory actions.

Similarly, if an agency issues two EO 13771 deregulatory actions with total cost savings of $200 million to offset the cost of an EO 13771 regulatory action with a cost of $150 million, the agency may bank the surplus cost savings of $50 million to offset the cost of another EO 13771 regulatory action, regardless of when the latter action is issued. See Questions 24 and 25 for accounting conventions that allow for appropriate comparison of costs and cost savings experienced at different time periods.

***Q30. Can EO 13771 deregulatory actions (and associated cost savings) be transferred within an agency?***

A: Yes. The requirements of EO 13771 apply agency-wide. An EO 13771 deregulatory action issued by a component in one agency can be used to offset an EO 13771 regulatory action issued by a different component in that same agency.

***Q31. Can EO 13771 deregulatory actions (and associated cost savings) be transferred between agencies?***

A: An agency that is not able to identify sufficient EO 13771 deregulatory actions for an EO 13771 regulatory action it intends to issue may submit a written request to the Director of OMB to assess whether the transfer of EO 13771 deregulatory action credits (after consultation with the supplying agency) would be appropriate before submitting the EO 13771 regulatory action to OMB for review under EO 12866. However, if the transfer is not appropriate, the agency must identify adequate offsets absent an exemption.

## VI.      Process Questions

***Q32. How does EO 13771 affect the consideration of regulatory benefits or other requirements under EO 12866?***

A: EO 13771 does not change the requirements of EO 12866, which remains the primary governing EO regarding regulatory review and planning. In particular, EO 13771 has no effect on the consideration of benefits in informing any regulatory decisions. For all EO 13771 regulatory actions and EO 13771 deregulatory actions, except where prohibited by law, agencies must continue to assess and consider both benefits and costs and comply with all existing requirements and guidance, including but not limited to those in EO 12866 and OMB Circular A-4.

***Q33. Which EO 13771 regulatory actions might qualify for a full or partial exemption from EO 13771 requirements?***

A: The following categories of EO 13771 regulatory actions may qualify for a full or partial exemption from EO 13771's requirements: 1) expressly exempt actions; 2) emergency actions; 3) statutorily or judicially required actions; and 4) *de minimis* actions. These categories are not exhaustive. For any EO 13771 regulatory action an agency believes qualifies for an exemption under any of the circumstances provided below, agencies should submit exemption requests to OIRA prior to submitting the action to OMB for review under EO 12866 or prior to publication of the EO 13771 regulatory action if it was not subject to EO 12866 review.

- Expressly exempt – EO 13771 expressly exempts regulations issued with respect to a military, national security (see Question 7 above), or foreign affairs function, and regulations related to agency organization, management, or personnel. These actions qualify for a full exemption. See 5 USC 553.

13

- Emergencies – EO 13771 regulatory actions addressing emergencies such as critical health, safety, financial, non-exempt national security matters, or for some other compelling reason, may qualify for an exemption. In most cases, exemptions for such rules will be granted with respect to the timing of required offsets, allowing the agency to address the emergency before identifying and issuing EO 13771 deregulatory actions. Agencies will generally still be required to offset such actions. If necessary, the costs of such actions, and the requirement to identify for repeal at least two existing regulations, will be moved to the subsequent fiscal year for purposes of determining EO 13771 compliance.
- Statutorily or judicially required – EO 13771 does not prevent agencies from issuing regulatory actions in order to comply with an imminent statutory or judicial deadline, even if they are not able to satisfy EO 13771's requirements by the time of issuance. However, agencies will be required to offset any such EO 13771 regulatory actions as soon as practicable thereafter. In addition, this flexibility may not apply to discretionary provisions attached to EO 13771 regulatory actions required to comply with statutory or judicial deadlines.
- *De minimis* – EO 13771 regulatory actions with *de minimis* costs may qualify for an exemption. For example, if OIRA designates a proposed rule as significant under EO 12866 because it raises novel legal or policy issues, and the agency estimates the action would have present value costs of $50,000 spread over a large number of persons and/or entities, OIRA may exempt the action from some or all of the requirements of EO 13771.

### *Q34. Is a significant final regulatory action exempt from the requirements of EO 13771 if the action was designated not significant at a prior stage?*

A: Generally, no. Any regulatory action that is identified as significant at the final rule stage that imposes total costs greater than zero would need to be offset to comply with EO 13771, regardless of the determination in an earlier phase. Therefore, the agency should consult OIRA as soon as possible if it believes an action that was not determined to be significant at the draft or proposed rule stage may now be determined to be significant, perhaps due to substantive issues identified through public comment or further agency analysis.

### *Q35. How should agencies prioritize existing requirements to repeal or revise?*

A: Agencies should follow the requirements in EO 13777 for prioritizing existing requirements to repeal or revise. EO 13777 establishes Regulatory Reform Task Forces in agencies, and directs those task forces to evaluate existing regulations and make recommendations to the agency head regarding their repeal, replacement, or modification, consistent with applicable law. EO 13777 directs each Regulatory Reform Task Force to identify regulations that:

- Eliminate jobs, or inhibit job creation;
- Are outdated, unnecessary, or ineffective;
- Impose costs that exceed benefits;
- Create a serious inconsistency or otherwise interfere with regulatory reform initiatives and policies;

14

- Are inconsistent with the requirements of section 515 of the Treasury and General Government Appropriations Act, 2001 (44 U.S.C. 3516 note), or the guidance issued pursuant to that provision, in particular those regulations that rely in whole or in part on data, information, or methods that are not publicly available or that are insufficiently transparent to meet the standard for reproducibility; or
- Derive from or implement EOs or other Presidential directives that have been subsequently rescinded or substantially modified.

EO 13777 further directs each Regulatory Reform Task Force to seek input and other assistance, as permitted by law, from entities significantly affected by Federal regulations, including State, local, and tribal governments, small businesses, consumers, non-governmental organizations, and trade associations. Input from such public engagement may be used to prioritize recommendations to repeal or revise.

Finally, where the costs of an EO 13771 regulatory action will be incurred entirely or to a large degree by a certain sector or geographic area, the agency should prioritize EO 13771 deregulatory actions that affect the same sector or geographic area, to the extent feasible and permitted by law.

### Q36. Can regulatory and deregulatory actions be bundled in the same action?

A: Yes, under certain circumstances. Many actions submitted to OIRA for review under EO 12866 consist of logically connected changes to multiple but related sections of the Code of Federal Regulations. For example, a rule exempting some categories of regulated entities from compliance with a previously issued regulation may also require eligible entities to submit additional documentation to demonstrate eligibility for the exemption. In these cases, it may be legitimate and appropriate to pursue such changes through a single "bundled" action, and this guidance is not meant to materially change agency decision making in this area. Where an agency combines such provisions, the cost impact (the difference between costs imposed and cost savings, per Question 21) of such rules will generally determine whether such actions are EO 13771 regulatory actions that need to be offset, or EO 13771 deregulatory actions. Agencies, however, should avoid artificially bundling provisions that are not logically connected in a single regulatory action. OIRA may determine that the regulatory and deregulatory portions of the rule should be considered separately for purposes of EO 13771 compliance.

Agencies should consult with OIRA when considering bundling regulatory and deregulatory actions.

### Q37. When and how should agencies identify EO 13771 deregulatory actions?

A: The agency's *Unified Agenda of Regulatory and Deregulatory Actions* should reflect compliance with the requirements of EO 13771, and should include, to the extent practicable, EO 13771 deregulatory actions that, when combined with EO 13771 deregulatory actions that are not regulations (such as Paperwork Reduction Act information collection reforms), are sufficient to offset those actions appearing in the Agenda that are or are expected to result

in EO 13771 regulatory actions. At a minimum, the agency should identify all EO 13771 deregulatory actions, along with cost savings estimates, by the time it submits to OMB for review under EO 12866 the corresponding EO 13771 regulatory action. In the rare event that an agency is unable to identify sufficient EO 13771 deregulatory actions, OIRA will address such a situation on a case-by-case basis.

While each *Federal Register* notice should identify whether the regulation is an EO 13771 regulatory action, there is no need to discuss specific offsetting EO 13771 deregulatory actions within the same *Federal Register* entry. Additionally, offsetting the costs of regulatory actions to comply with the requirements of EO 13771 should not serve as the basis or rationale, in whole or in part, for issuing an EO 13771 deregulatory action.

### Q38.   When must identified EO 13771 deregulatory actions be finalized?

A: To the extent practicable, agencies should issue EO 13771 deregulatory actions before or concurrently with the EO 13771 regulatory actions they are intended to offset. By the end of each fiscal year, including any carryover from previous fiscal years, agencies should have: (1) issued at least twice the number of EO 13771 deregulatory actions as EO 13771 regulatory actions; and (2) appropriately offset the cost of all final EO 13771 regulatory actions issued. The offset should be consistent with their respective total incremental cost allowance for future fiscal years, and agencies are expected to maintain compliance, to the extent practicable, throughout the year. These requirements exclude those EO 13771 regulatory actions issued during the year for which either law prohibits compliance with EO 13771 or the agency received an exemption from OIRA. When an agency receives a partial exemption from OIRA (*e.g.,* with respect to the timing of EO 13771 deregulatory actions), the requirements should be addressed as soon as practicable. Agencies should plan in advance and leave sufficient time, if necessary, for OIRA to complete its review under EO 12866 or the Paperwork Reduction Act, and for agencies to publish in the *Federal Register* any EO 13771 deregulatory actions needed to comply with EO 13771 before the end of each fiscal year.

### Q39.   What happens if an agency is not in full compliance with the requirements of EO 13771 at the end of a fiscal year?

A: If, by the end of a fiscal year, an agency does not finalize at least twice as many EO 13771 deregulatory actions as EO 13771 regulatory actions issued during the fiscal year, or has not met its total incremental cost allowance for that fiscal year, the agency must, within 30 days of the end of the fiscal year, submit for the OMB Director's approval, a plan for coming into full compliance with EO 13771 that addresses each of the following:

   (1) The reasons for, and magnitude of, non-compliance;
   (2) How and when the agency will come into full compliance; and
   (3) Any other relevant information requested by the Director.

This excludes EO 13771 regulatory actions that are exempt or where compliance with EO 13771 is prohibited by law.

OMB may recommend that an agency take additional steps to achieve compliance, such as publishing a notice in the *Federal Register* requesting ideas from the public on EO 13771 deregulatory actions to pursue. OMB may also request that agencies post plans approved by the Director.

This guidance is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.